# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARKEL AMERICAN INSURANCE COMPANY, | )<br>)<br>) |
| *Plaintiff*, | ) No. 23-cv-01712<br>)<br>) |
| v. | )<br>) |
| JOSEPH I. NEVERAUSKAS,<br>LANA BATOCHIR,<br>MARIJA VELKOVA, and<br>JACOB HOULE, | )<br>)<br>)<br>)<br>) |
| *Defendants*. | ) |

## JOSEPH I. NEVERAUSKAS' ANSWER
## TO COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Defendant, JOSEPH I. NEVERAUSKAS ("Neverauskas"), by and through his attorneys, Amundsen Davis, LLC, and for his answer to Plaintiff Markel American Insurance Company's ("MAIC") Complaint for Declaratory Judgment, states as follows:

### NATURE OF THE ACTION

1. This is an insurance coverage dispute. MAIC issued a maritime insurance contract—specifically, a vessel protection and indemnity policy—to Defendant, Joseph I. Neverauskas, for his private pleasure use of the insured yacht, a 2007 Hunter 41' Deck Salon sailboat.

**ANSWER:** **Admit that the nature of this action is adequately described as an "insurance coverage dispute." Answering further, admit that MAIC issued Policy No. MHY00000019615 to Neverauskas, which is a written document that speaks for itself ("MAIC Policy"). Neverauskas denies any allegations in Paragraph 1 that are inconsistent with the MAIC Policy and specifically denies that the MAIC Policy only insures his private pleasure use of the insured yacht.**

2. On August 13, 2022, Chicago AquaLeisure, LLC ("Chicago AquaLeisure"), a commercial chartering company, owned a 2003 Four Winns 348 Vista yacht, called "La AquaVida." Chicago AquaLeisure rented La AquaVida to an individual named Fabian Rosado pursuant to a bareboat charter agreement. On August 13, 2022, Mr. Neverauskas, a licensed United States Coast Guard captain, was hired and received a fee to captain and operate La AquaVida. On

August 13, 2022, while Mr. Neverauskas was captaining the La AquaVida pursuant to his commercial engagement in, an area of Lake Michigan referred to as the "Playpen," he allegedly negligently operated the vessel, resulting in bodily injuries to Defendants Lana Batochir, Marija Velkova, both of whom have filed lawsuits against Mr. Neverauskas in the Circuit Court of Cook County, Illinois, and to Defendant Jacob Houle, who has prepared a draft complaint.

**ANSWER:** **Admit that Chicago AquaLeisure rented La Aqua Vida to Fabian Rosado pursuant to a bareboat charter agreement. Admit that Neverauskas was a licensed United States Coast Guard captain and operated La Aqua Vida on August 13, 2022 in an area of Lake Michigan referred to as the "playpen" and that Neverauskas is alleged to have negligently operated the vessel, resulting in bodily injuries to Defendants Lana Batochir, Marija Velkova and Jacob Houle. Neverauskas also admits that he is a defendant in lawsuits filed in Cook County, Illinois styled *Marija Velkova v. Joseph Neverauskas, Theresa Tran, and Chicago AquaLeisure, LLC*, Case No. 2022 L 010139, and *Lana Batochir v. Joseph Neverauskas, Chicago AquaLeisure, LLC, and Theresa Tran*, Case No. 2022 L 011324. Answering further, Neverauskas admits that at the time this Complaint was filed Jacob Houle had prepared a draft complaint. Neverauskas denies each and every of the remaining allegations in Paragraph 2.**

3. Mr. Neverauskas seeks coverage from MAIC with respect to the August 13, 2022 incident and resulting litigation. However, the MAIC policy's protection and indemnity coverage applies, subject to its terms, conditions, and limitations, only to damages for bodily injury or property damage for which an insured becomes legally liable through ownership, maintenance, or use of the insured yacht (i.e., Mr. Neverauskas' 2007 Hunter 41 Deck Salon sailboat) or through a non-owned yacht being operated by Mr. Neverauskas with the owner's permission. Because the underlying lawsuits and potential lawsuit do not involve the ownership, maintenance, or use of the insured yacht or a non-owned yacht, the MAIC policy is not implicated. Therefore, MAIC owes no coverage for the incident or the resulting claims or litigation under the policy.

**ANSWER:** **Admit that Neverauskas seeks coverage from MAIC with respect to the August 13, 20222 incident and resulting litigation under the MAIC Policy. Answering further, the remaining allegations of Paragraph 3 contain legal conclusions to which no response is required. To the extent a response is required, Neverauskas states that the MAIC Policy is a written document that speaks for itself. Neverauskas denies any allegation in paragraph 3 that is inconsistent with the MAIC Policy and denies that the MAIC Policy is not implicated and that MAIC owes no coverage for the incident or the resulting claims or litigation under the MAIC Policy.**

## PARTIES, JURISDICTION, AND VENUE

4. This action arises under the general maritime law of the United States governing maritime insurance contracts. Specifically, this action concerns a protection and indemnity policy for vessels operating on navigable waters of the United States.

**ANSWER:** **Paragraph 4 contains legal conclusions to which no response is required. To the extent a response is required, the allegations in Paragraph 4 are admitted.**

5. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1333, as this is an admiralty and maritime action within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

**ANSWER:** **Paragraph 5 contains legal conclusions to which no response is required. To the extent a response is required, the allegations in Paragraph 5 are admitted.**

6. Plaintiff MAIC is a Virginia corporation with its principal place of business in Glen Allen, Virginia.

**ANSWER:** **On information and belief, the allegations in Paragraph 6 are admitted.**

7. Defendant Joseph I. Neverauskas is a citizen of Cook County, Illinois.

**ANSWER:** **Admit.**

8. Defendant Lana Batochir is a citizen of Cook County, Illinois. Ms. Batochir is a plaintiff in the underlying litigation, pending in the Circuit Court of Cook County, Illinois. Ms. Batochir is named as a Defendant in this complaint only to the extent she is required to be named as a necessary party or has an interest in the outcome of this dispute. In the event Ms. Batochir stipulates to be bound by the judgment of the Court, MAIC will dismiss her from the action.

**ANSWER:** **Admit that Lana Batochir is a plaintiff in a lawsuit pending in the Circuit Court of Cook County, Illinois, styled *Lana Batochir v. Joseph Neverauskas, Chicago Aqualeisure, LLC, and Theresa Tran*, Case No. 2022 L 011324. Answering further, Neverauskas lacks knowledge or information sufficient to form a belief as to the truth of whether Lana Batochir is a citizen of Cook County, Illinois. The remaining statements in Paragraph 8 are not factual allegations that require a response.**

9. Defendant Marija Velkova is a citizen of Cook County, Illinois. Ms. Velkova is a plaintiff in the underlying litigation, pending in the Circuit Court of Cook County, Illinois. Ms. Velkova is named as a Defendant in this complaint only to the extent she is required to be named as a necessary party or has an interest in the outcome of this dispute. In the event Ms. Velkova stipulates to be bound by the judgment of the Court, MAIC will dismiss her from the action.

**ANSWER:** **Admit that Marija Velkova is a plaintiff in a lawsuit pending in the Circuit Court of Cook County, Illinois, styled *Marija Velkova v. Joseph Neverauskas, Theresa Tran, and Chicago AquaLeisure, LLC*, Case No. 2022 L 010139. Answering further, Neverauskas lacks knowledge or information sufficient to form a belief as to the truth of whether Marija Velkova is a citizen of Cook**

County, Illinois. The remaining statements in Paragraph 9 are not factual allegations that require a response.

10. Defendant Jacob Houle is a citizen of Cook County, Illinois. Mr. Houle has prepared a complaint in the underlying litigation, to be filed in the Circuit Court of Cook County, Illinois. Mr. Houle is named as a Defendant in this complaint only to the extent he is required to be named as a necessary party or has an interest in the outcome of this dispute. In the event Mr. Houle stipulates to be bound by the judgment of the Court, MAIC will dismiss him from the action.

**ANSWER:** **Admit that at the time this Complaint was filed, Jacob Houle had prepared a draft complaint indicating it would be filed in the Circuit Court of Cook County, Illinois. Answering further, Neverauskas lacks knowledge or information sufficient to form a belief as to the truth of whether Jacob Houle is a citizen of Cook County, Illinois. The remaining statements in Paragraph 10 are not factual allegations that require a response.**

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because: (1) the subject matter of the insurance contract is principally located in Cook County, Illinois; (2) the incident giving rise to the underlying litigation occurred in Cook County, Illinois; (3) the underlying litigation was filed in Cook County, Illinois; and (4) all Defendants are residents of this District.

**ANSWER:** **Paragraph 11 contains legal conclusions to which no response is required. To the extent a response is required, the allegations in Paragraph 11 are admitted.**

12. All Defendants are subject to this Court's personal jurisdiction because they are domiciled in, and citizens of, Illinois.

**ANSWER:** **Paragraph 12 contains a legal conclusion to which no response is required. To the extent a response is required, on information and belief, the allegations in Paragraph 12 are admitted.**

## THE INCIDENT

13. This case arises out of an alleged boating accident that occurred on August 13, 2022.

**ANSWER:** **Admit.**

14. Prior to the incident, Fabian Rosado had rented the La AquaVida from Chicago AquaLeisure pursuant to a bareboat charter agreement. A true and correct copy of the bareboat charter agreement is attached as Exhibit A.

**ANSWER:** **Admit.**

15. Pursuant to the bareboat charter agreement, "[t]he CHARTERER must hire their own captain (the cost of a captain is not included in the charter price)." Ex. A.

**ANSWER:   The document titled "Chicago AquaLeisure Terms and Conditions" that is attached to the Complaint as Exhibit A is a written document that speaks for itself. Any allegations in Paragraph 15 that are inconsistent with the referenced document are denied.**

16. Pursuant to the bareboat charter agreement, Mr. Rosado was required to "select a qualified mariner, from OWNER'S approved operator list to captain the vessel or they may provide their own with similar skill and proficiency, to operate the vessel." Ex. A.

**ANSWER:   The document titled "Chicago AquaLeisure Terms and Conditions" that is attached to the Complaint as Exhibit A is a written document that speaks for itself. Any allegations in Paragraph 16 that are inconsistent with the referenced document are denied.**

17. Chicago AquaLeisure provided Mr. Rosado with an approved operator list to captain the La AquaVida that included Mr. Neverauskas.

**ANSWER:   Neverauskas admits that he is identified on an approved operator list for Chicago AquaLeisure to captain La Aqua Vida. Neverauskas lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17 and, therefore, denies the same.**

18. Mr. Neverauskas was selected from Chicago AquaLeisure's approved operator list to captain and operate the La AquaVida on August 13, 2022 for the duration of the charter.

**ANSWER:   Neverauskas admits that he is identified on an approved operator list for Chicago AquaLeisure to captain La Aqua Vida. Neverauskas lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18, and, therefore, denies the same.**

19. Mr. Neverauskas was paid a fee to captain and operate the La AquaVida on August 13, 2022 for the duration of the charter.

**ANSWER:   Denied.**

20. On August 13, 2022, Mr. Neverauskas was operating and captaining the La AquaVida in an area of Lake Michigan known as the "Playpen."

**ANSWER:   Admit.**

21. On August 13, 2022, Ms. Batochir, Ms. Velkova, and Mr. Houle allegedly suffered injuries as a result of acts or omissions of Mr. Neverauskas in operating and captaining the La

AquaVida as described in greater detail in complaints subsequently prepared or filed by Ms. Batochir, Ms. Velkova, and Mr. Houle, discussed immediately below.

**ANSWER:** **Admit only that Ms. Batochir, Ms. Velkova, and Mr. Houle allege to have suffered injuries on August 13, 2022 as a result of Neverauskas' acts or omissions that and Ms. Batochir and Ms. Velkova have filed complaints in Cook County, IL and, at the time this Complaint was filed, Mr. Houle prepared a complaint to be filed. The complaints are written documents that speak for themselves and Neverauskas denies any allegations in paragraph 21 that are inconsistent with the complaints. The remaining allegations in Paragraph 21 are denied.**

### THE UNDERLYING LITIGATION AND POTENTIAL LITIGATION

22. On November 14, 2022, Ms. Velkova filed a complaint in the Circuit Court of Cook County, Law Division, Case No. 2022-L-010139 (the "Velkova Lawsuit"). A true and correct copy of the complaint in the Velkova Lawsuit is attached as Exhibit B.

**ANSWER:** **Admit.**

23. On December 21, 2022, Ms. Batochir filed a complaint in the Circuit Court of Cook County, Law Division, Case No. 2022-L-011324 (the "Batochir Lawsuit"). A true and correct copy of the complaint in the Batochir Lawsuit is attached as Exhibit C.

**ANSWER:** **Neverauskas denies a true and correct copy of the complaint in the Batochir Lawsuit is attached as Exhibit C to the Complaint, but Neverauskas admits that a true and correct copy of the complaint in the Batochir Lawsuit is attached as one of two documents marked as Exhibit D to the Complaint. The remaining allegations contained in Paragraph 23 are admitted.**

24. On February 14, 2023, Mr. Houle filed in a pending admiralty limitation of liability matter a draft complaint that he intends to file in the Circuit Court of Cook County, Illinois (the "Houle Matter"). A true and correct copy of the draft complaint is attached as Exhibit D.

**ANSWER:** **Admit, but states that the Complaint attaches two documents marked as Exhibit D, one of which is draft complaint concerning the Houle Matter.**

25. The complaints in the Velkova Lawsuit, Batochir Lawsuit, and Houle Matter generally allege that Mr. Neverauskas was negligent and caused Ms. Batochir, Ms. Velkova, and Mr. Houle to sustain injuries.

**ANSWER:** **The complaints filed in the Velkova Lawsuit and Batochir Lawsuit, and the draft complaint regarding the Houle Matter, are written documents that speak for themselves. Neverauskas denies any allegations contained in Paragraph 25 that are inconsistent with the referenced documents.**

26. Specifically, the complaints allege that, on August 13, 2022, while Mr. Neverauskas was captaining and operating the La AquaVida pursuant to his commercial engagement, Mr. Neverauskas reversed the La AquaVida into a raft carrying Ms. Batochir and Ms. Velkova, resulting in injuries to Ms. Batochir and Ms. Velkova, as well as to Mr. Houle, who was on a rear swim platform of a nearby vessel anchored near the La AquaVida. Ex. B, Count I; Ex. C, Count 1; Ex. D, Count I.

**ANSWER:** **The complaints filed in the Velkova Lawsuit and Batochir Lawsuit, and the draft complaint in the Houle Matter, are written documents that speak for themselves. Neverauskas denies any allegations contained in Paragraph 26 that are inconsistent with the allegations in the complaints. Neverauskas further denies that the complaints allege that he was operating La Aqua Vida "pursuant to his commercial engagement."**

## THE POLICY

27. MAIC issued The Markel Helmsman Yacht Policy No. MHY00000019615 to Mr. Neverauskas for the effective dates of March 21, 2022 to March 21, 2023 (the "Policy"). The Policy provides a protection and indemnity limit of liability of $300,000 for all damages, losses, or release bonds resulting from any occurrence. A true and correct certified copy of the Policy is attached hereto as Exhibit E.

**ANSWER:** **Admit MAIC issued the MAIC Policy to Neverauskas, which is a written document that speaks for itself. Neverauskas denies any allegations contained in Paragraph 27 that are inconsistent with the MAIC Policy. Answering further, Neverauskas admits that Exhibit E purports to be a certified copy of the MAIC Policy.**

28. The Policy provides protection and indemnity coverage as follows:

We will cover damages for **bodily injury** or **property damage** for which an **insured becomes legally liable through ownership, maintenance, or use of the insured** yacht, or through a non-owned yacht being operated by you with the owner's permission. This includes:

1) coverage for **property damage** to a **non-owned yacht**;

2) with respect to a paid captain or paid crew member, obligations and duties under Jones Act or general maritime law;

3) the cost of the bond to release the **insured yacht** if the **insured yacht** is arrested, confiscated, or detained because of injury or damage to which this coverage applies.

Ex. E, Form MHY5001-0114, p. 10 of 13.

7

**ANSWER:** **The MAIC Policy is a written document that speaks for itself. Neverauskas denies any allegations contained in Paragraph 28 that are inconsistent with the MAIC Policy.**

29. The Policy defines insured yacht as follows:

10. **Insured yacht** means:

 a. The yacht shown on the Declarations Page, including its spars, sails, rigging, tackle, fittings, machinery and equipment necessary for the safe operation and maintenance of the yacht. It also includes **tenders**.

 b. A **newly acquired yacht**.

Ex. E, Form MHY5001-0114, Definition 10, p. 1 of 13.

**ANSWER:** **The MAIC Policy is a written document that speaks for itself. Neverauskas denies any allegations contained in Paragraph 29 that are inconsistent with the MAIC Policy.**

30. The yacht shown on the Declarations Page of the Policy is a 2007 Hunter 41' Deck Salon sailboat, identification no. HUN413357A707.

**ANSWER:** **The MAIC Policy is a written documents that speaks for itself. Neverauskas denies any allegations in Paragraph 30 that are inconsistent with the MAIC Policy. Answering further, Neverauskas denies that the stated identification number for the yacht shown on the Declarations page is HUN413357A707. The identification number is HUN41357A707.**

31. The Policy defines non-owned yacht as follows:

15. **Non-owned yacht** means any watercraft being operated by you with the owner's permission that is not:

 a. owned in whole or in part by you or any **resident**;

 b. rented or under charter to you;

 c. being used for other than private pleasure;

 d. available for your regular use;

 e. more than 5 feet longer than the insured yacht;

 f. designed for, or capable of, speeds in excess of 65 miles per hour; or

      g.      a personal watercraft.

Ex. E, Form MHY5001-0114, Definition 15, p. 2 of 13.

**ANSWER:**     **The MAIC Policy is a written document that speaks for itself. Neverauskas denies any allegations contained in Paragraph 31 that are inconsistent with the MAIC Policy.**

<b><u>COVERAGE DISPUTE</u></b>

32.     Mr. Neverauskas seeks insurance coverage from MAIC under the Policy in connection with the Velkova Lawsuit, Batochir Lawsuit, Houle Matter, and/or the incident underlying the Velkova Lawsuit, Batochir Lawsuit, and Houle Matter.

**ANSWER:**     **Admit.**

33.     MAIC denies it owes any defense or indemnity with respect to the Velkova Lawsuit, Batochir Lawsuit, Houle Matter, or the incident underlying the Velkova Lawsuit, Batochir Lawsuit, and Houle Matter.

**ANSWER:**     **Admit, but Neverauskas denies that MAIC's denial is proper.**

34.     An actual and justiciable controversy exists as to the availability of insurance coverage under the Policy with respect to the Velkova Lawsuit, Batochir Lawsuit, Houle Matter, and the incident underlying the Velkova Lawsuit, Batochir Lawsuit, and Houle Matter.

**ANSWER:**     **Admit.**

35.     MAIC reserves and preserves all rights and defenses under the Policy, in equity, and at law.

**ANSWER:**     **Paragraph 35 contains no factual allegations to which a response is required.**

36.     Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liabilities of the parties and to give such other and further relief that may be necessary.

**ANSWER:**     **Paragraph 36 contains legal conclusions to which no response is required. To the extent a response is required, the allegations in Paragraph 36 are admitted.**

<b><u>COUNT I</u><br/>DECLARATORY JUDGMENT</b>

37.     MAIC restates and incorporates the allegations of paragraphs 1 through 36 above as if set forth fully herein.

**ANSWER:** In response to Paragraph 37, Neverauskas adopts and incorporates, as if fully set forth here, his answers and responses to Paragraphs 1 through 36 of the Complaint.

38. The Policy's protection and indemnity coverage applies, subject to its terms, conditions, and limitations, only to damages for bodily injury or property damage for which an insured becomes legally liable through ownership, maintenance, or use of the insured yacht, or through a non-owned yacht being operated by Mr. Neverauskas with the owner's permission.

**ANSWER:** Paragraph 38 contains legal conclusions to which no response is required. To the extent a response is necessary, Neverauskas states that the MAIC Policy is a written document that speaks for itself. Neverauskas denies any allegations in Paragraph 38 that are inconsistent with the MAIC Policy.

39. The Velkova Lawsuit, Batochir Lawsuit, Houle Matter, and the incident underlying the Velkova Lawsuit, Batochir Lawsuit, and Houle Matter do not involve the ownership, maintenance or use of the insured yacht (i.e., Mr. Neverauskas' 2007 Hunter 41 Deck Salon sailboat).

**ANSWER:** Paragraph 39 contains legal conclusions to which no response is required. To the extent a response is required, admit.

40. The Velkova Lawsuit, Batochir Lawsuit, Houle Matter, and the incident underlying the Velkova Lawsuit, Batochir Lawsuit, and Houle Matter do not involve the ownership, maintenance or use of a non-owned yacht.

**ANSWER:** Paragraph 40 contains legal conclusions to which no response is required. To the extent a response is necessary, the allegations in Paragraph 40 are denied.

41. At the time of the incident underlying the Velkova Lawsuit, Batochir Lawsuit, and Houle Matter, the La AquaVida was being used by Mr. Neverauskas for other than private pleasure.

**ANSWER:** Denied.

42. Therefore, the Policy requirements for protection and indemnity coverage are not triggered by the Velkova Lawsuit, Batochir Lawsuit, Houle Matter, or the incident underlying the Velkova Lawsuit, Batochir Lawsuit, and Houle Matter.

**ANSWER:** Paragraph 42 contains legal conclusions to which no response is required. To the extent a response is required, the allegations in Paragraph 42 are denied.

43. For the foregoing reasons, MAIC owes no defense or indemnity to Mr. Neverauskas with respect to the Velkova Lawsuit, Batochir Lawsuit, Houle Matter, or the incident underlying the Velkova Lawsuit, Batochir Lawsuit, and Houle Matter.

**ANSWER:** Paragraph 43 contains legal conclusions to which no response is required. To the extent a response is required, the allegations in Paragraph 43 are denied.

Respectfully Submitted,

AMUNDSEN DAVIS, LLC

/s/ Christine V. Anto
One of the Attorneys for Joseph I. Neverauskas

Christine V. Anto (ARDC No. 6276102)
Michelle E. Tinajero (ARDC No. 6333465)
AMUNDSEN DAVIS, LLC
150 North Michigan Avenue, Suite 3300
Chicago, Illinois 60601
T: (312) 894-3278
canto@amundsendavislaw.com
mtinajero@amundsendavislaw.com