UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARKEL AMERICAN INSURANCE COMPANY, ) ) ) Plaintiff, ) ) v. ) ) ) ) JOSEPH I. NEVERAUSKAS, LANA ) BATOCHIR, and MARIJA VELKOVA, ) ) Defendants. ) | No. 23-cv-01712 Judge April M. Perry |

**OPINION AND ORDER**

Before the Court are cross-motions for summary judgment related to an insurance-coverage dispute. Plaintiff Markel American Insurance Company ("MAIC") filed suit seeking a declaration that Defendant Joseph I. Neverauskas ("Neverauskas"), the named insured under a policy issued by MAIC to Neverauskas (the "Policy"), is not entitled to defense or indemnity in connection with certain lawsuits brought against Neverauskas. Doc. 1. MAIC now seeks summary judgment on its sole declaratory-judgment count. Doc. 43. Neverauskas and Defendant Velkova oppose MAIC's motion, Docs. 47, 51, and Neverauskas also moves for summary judgment in his favor, Doc. 45. For the reasons set forth below, the Court denies MAIC's motion and grants Neverauskas's motion.

## BACKGROUND

The record establishes the following facts, which Neverauskas and MAIC generally agree on.[1] *See* Docs. 49, 56. In August 2022, Chicago AquaLeisure, LLC ("Chicago AquaLeisure"), a charter rental company, offered a yacht called La AquaVida to the public for charter. An individual (the "Boat Renter") rented La AquaVida for an outing, and as a part of his agreement with Chicago AquaLeisure was required to hire a captain to operate the vessel. Chicago AquaLeisure provided the Boat Renter with a list of approved captains, and that list included Neverauskas. Neverauskas is a licensed United States Coast Guard captain.

The Boat Renter contacted Neverauskas, and they agreed that Neverauskas would captain La AquaVida for an excursion on August 13, 2022. They agreed on a rate of payment for the four-hour charter and that the excursion would involve time spent in an area of Lake Michigan known as the Playpen. Neverauskas and the Boat Renter did not have any personal or business relationship prior to these communications.

On the date of the excursion, Neverauskas indeed captained La AquaVida, including in the area known as the Playpen. During the outing, Lana Batochir, Marija Velkova, and Jacob Houle allegedly suffered injuries resulting from Neverauskas's negligent acts or omissions in operating and captaining La AquaVida. Defendants Lana Batochir, Marija Velkova and former-defendant Jacob Houle subsequently filed lawsuits against Neverauskas in the Circuit Court of

---

[1] Velkova objects in her Local Rule 56.1 statement to much of the description of the events offered by MAIC and admitted to by Neverauskas. Many of Velkova's "objections" are not consistent with the requirements of Local Rule 56.1 in that they lack specific references to parts of the record and other supporting materials establishing the basis for the dispute. *See* LR 56.1(e)(3). Many of Velkova's objections also include argument which should have been raised in her responsive memorandum. *See* LR 56.1(e)(2), (g). Finally, many fail to properly admit or deny the disputed fact, including by failing to specify which part of the asserted fact is denied. *See* LR 56.1(e)(2). In her Memorandum, Velkova argues that even if the facts were undisputed, she would still prevail. Given that the Court denies MAIC's motion for summary judgment for the reasons set forth in Neverauskas's pleading and Statement of Facts, it is unnecessary to address the many issues posed by Velkova's non-compliant Statement of Facts, and the Court disregards it altogether.

Cook County, Illinois, (collectively, the "Underlying Suits") alleging that Neverauskas was negligent in his operation of La AquaVida, causing Batochir, Velkova and Houle to sustain injuries.

On March 20, 2023, MAIC initiated these proceedings to establish that it does not owe Neverauskas defense or indemnity under the Policy in connection with the Underlying Suits. Under the Policy, Neverauskas was covered for "bodily injury or property damage for which" he became liable "through ownership, maintenance, or use" of "the insured yacht" (a specific yacht owned by Neverauskas) or "through a non-owned yacht being operated by [Neverauskas] with the owner's permission." Doc. 1-6 at 21. At the heart of both motions for summary judgment is the Policy's definition of a "non-owned yacht." Under the Policy,

> **Non-owned yacht** means any watercraft being operated by you with the owner's permission that is not:
> a. owned in whole or in part by you or any **resident**;
> b. rented or under charter to you;
> c. being used for other than private pleasure;
> d. available for your regular use;
> e. more than 5 feet longer than the **insured yacht;**
> f. designed for, or capable of, speeds in excess of 65 miles per hour; or
> g. a **personal watercraft**.

*Id*. at 13 (bold in original, identifying terms defined elsewhere). All references in the Policy to "you" or "yours" refer to Neverauskas. *Id.* at 12.

MAIC argues that Neverauskas is not covered because exclusion "c." applies. Specifically, it argues that Neverauskas was using La AquaVida "for other than private pleasure" at the time of the accident, and therefore La AquaVida was not a non-owned yacht as defined by the Policy. Thus, MAIC believes it is entitled to summary judgment. Neverauskas argues that it is reasonable to interpret the definition of "non-owned yacht" to include La AquaVida as it was

being used during the accident for the private pleasure of the Boat Renter and his guests. Neverauskas therefore argues that he is entitled to summary judgment in his favor.

## LEGAL STANDARD

Summary judgment is proper only when the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. At the summary judgment stage, the court considers the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in his favor. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838 (7th Cir. 2009).

## ANALYSIS

The moving parties agree that Illinois law applies to the coverage dispute here. Doc 44 at 8; Doc 46 at 2.[2] "Under Illinois law, the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813, 818–19 (7th Cir. 2008). "When construing the language of an insurance policy" to determine coverage, "a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy." *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007). The policy "is to be construed as a whole, giving effect to every provision" and "taking into account the type of insurance provided, the nature of the risks involved, and the overall purpose of the contract." *Id.* "If the words used in the insurance policy are reasonably susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy," particularly "with respect to provisions that limit or exclude coverage." *Id.* "If the words used in the policy are clear and

---

[2] Under Illinois law, the duty to defend is triggered if the underlying complaint alleges facts bringing the case within the policy's coverage, making MAIC's duty to defend dependent on whether Neverauskas is covered as to the Underlying Suits. *Int'l Ins. Co. v. Rollprint Packaging Prods., Inc.*, 728 N.E.2d 680, 688 (Ill. App. Ct. 2000).

unambiguous, they must be given their plain, ordinary, and popular meaning, and the policy will be applied as written, unless it contravenes public policy." *Id.* (internal citations omitted).

Employing these guidelines, the Court is persuaded that the definition of non-owned yacht is ambiguous because it is reasonably susceptible to multiple interpretations. The Policy does not specify whose use of the watercraft is relevant to determining whether it constitutes a non-owned yacht under the Policy. It simply states that a non-owned yacht "means any watercraft being operated by you … that is not… being used for other than private pleasure." At their most literal, these words might mean that if anyone on the watercraft is using the vessel for something other than private pleasure, then the vessel is not covered. For example, if Neverauskas were operating a friend's boat, and that friend had hired a bartender to serve drinks, the boat would qualify as "being used for other than private pleasure" because the bartender would not be using the boat for private pleasure. None of the parties argue in support of the purely literal interpretation, however.

MAIC argues that the Policy language refers only to whether Neverauskas was using the watercraft for private pleasure. Because he was not, MAIC argues the vessel is not covered. But MAIC's construction is not supported by the surrounding context. Many of the other exclusions to what is considered a non-owned yacht include a personal qualifier specifying that the meaning intended is one specific to Neverauskas: A non-owned yacht it not one "a. owned in whole or in part *by you* or any resident;" "b. rented or under charter *to you*; or "d. available for *your* regular use[.]" Doc. 1-6 at 13. Sub-provision "c." on the other hand, does not include this personal qualifier. And it easily could have. It could have said: "being used *by you* for other than private pleasure" or "being used for other than *your* private pleasure." Even the phrase preceding these sub-provisions includes the personal qualifier: a non-owned yacht "means any watercraft being

operated *by you*." *Id*. In light of this surrounding context, the omission of the qualifier "you" or "your" can reasonably be interpreted to have some significance, broadening the phrase to include more than just Neverauskas's use.

And that is precisely what Neverauskas argues. He suggests that the phrase might refer to the use of the Charterers. This interpretation suggests that if the vessel is being used for private pleasure by most of its occupants, or if the vessel's primary use during the relevant outing can be described as "for private pleasure," then the exclusion does not apply. This reading would exclude from coverage outings by a commercial fishing vessel or a ship transporting commercial goods, while providing coverage for an outing like that involved in the Underlying Suits. Neverauskas's interpretation carries the added benefit of coinciding with common sense: The Court is confident that just about anyone who observed La AquaVida heading towards the Playpen on August 13, 2022, would agree it was being used "for private pleasure." (Or, to apply the convoluted double-negative phrasing of the Policy, "not being used for other than private pleasure.")

Policy exclusions "are read narrowly and apply only if their application is clear and free from doubt." *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006–07 (7th Cir. 2021) (applying Illinois law). Here, the terms of the policy are ambiguous and therefore must be strictly construed against MAIC. *BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813, 819 (7th Cir. 2008). Because the term "non-owned yacht" does not limit coverage to watercrafts being used for Neverauskas's private pleasure, the Court finds that Neverauskas is covered.

MAIC counters that an interpretation in favor of coverage would be unreasonable given the purpose of the Policy and type of insurance provided. It argues that coverage here would improperly convert Neverauskas's "personal sailboat policy into a commercial maritime policy

… and greatly expand the nature and scope of the risks insured." Doc. 55 at 6. But the only Policy language MAIC points to in support of its unreasonableness argument might just as well suggest the reasonableness of coverage. MAIC states that the Policy "similarly limits" coverage regarding Neverauskas's personal sailboat, the insured yacht, to private pleasure use. But that "private pleasure" limitation is far more robust than the limitation applicable to a non-owned yacht. Under "Use of the Insured Yacht," the Policy provides that "The **insured yacht** is for private pleasure use only. Coverage is not provided for charter, hire, lease or any other commercial use." Doc. 1-6 at 14. Similarly comprehensive language is noticeably absent from the definition of a non-owned yacht. This absence cuts against MAIC's implication that the Policy as a whole was meant to exclude any and all commercial use by Neverauskas. Neverauskas could have reasonably read this difference in language to mean that coverage for non-owned yachts was not so limited, and it was MAIC's burden as the drafter to protect against that possibility had it intended otherwise. *See United Nat'l Ins. Co. v. Fasteel, Inc.*, 550 F. Supp. 2d 814, 821 (N.D. Ill. 2008) (noting that "the insurer bears the burden of errors").

Finally, the cases MAIC relies on are not persuasive. MAIC may be correct that some of these cases involved "private pleasure" provisions, but to the extent "private pleasure" was defined differently, MAIC's reliance upon them is unavailing. *See, e.g.*, *Riggs v. Aetna Ins. Co.*, 454 A.2d 818, 819 (D.C. Cir. 1983) (interpreting exclusion providing "[all] coverage under this policy shall terminate upon the chartering or hiring of the yacht *for any purpose*" and affirming its application where district court found that yacht was being chartered at the time of the accident). Moreover, the Court disagrees with MAIC's argument that *Eastern Insurance Company v. Austin* stands for the general proposition that it is only the insured's use of the watercraft that matters when interpreting a private pleasure provision. *See* 396 So.2d 823, 825

(Fla. 1981). In *Austin*, the court concluded that a boat had been used for pleasure even when the insured and his fishing guests sold surplus fish to defray expenses, and sometimes there was an arrangement between the insured and his fishing guests that a certain percentage of the entire catch would be sold for this purpose. Given that there was no definition in the insurance policy for "private pleasure purposes," and that the court considered the phrase to be ambiguous, the court determined that the insured was entitled to coverage. *Id*. What this Court finds most significant about *Austin* is that the court included the conduct of the fishing guests, not just the insured, in its analysis.

Insurance policies are contracts, and the drafters are free to make reference to any party or non-party's behavior, intentions, or usage in setting the conditions for coverage. MAIC complains that the definition of "private pleasure" did not refer to use of the watercraft by third parties or to the trip's purpose, but the problem here is that it also did not refer to Neverauskas's purpose. By leaving a term subject to multiple reasonable interpretations totally undefined, MAIC created an ambiguity in the Policy. For these reasons, the Court finds that Neverauskas is entitled to coverage under the Policy and grants summary judgment in his favor.

## CONCLUSION

For the foregoing reasons, the Court denies MAIC's motion for summary judgment and grants Neverauskas's motion for summary judgment.

Dated: February 26, 2025

_____
APRIL M. PERRY
United States District Judge